**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| JACOB L. ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. Case No.: |
| CITY OF GALLATIN, CRAIG HAYES, | ) | |
| in his official capacity as city councilman | ) | **Jury Demand** |
| and individually, STEPHEN FANN, in his | ) | |
| official capacity as city councilman and | ) | |
| individually, SHAWN FENNELL, in his | ) | |
| official capacity as city councilman and | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

---

**COMPLAINT**

---

**COMES NOW** Plaintiff JACOB L. ALEXANDER, by and through counsel, and seeks damages pursuant to 42 U.S.C. § 1983 and arising from the violation of his rights under the United States Constitution, federal and state and would aver as follows:

**INTRODUCTION**

1. This civil action against the City of Gallatin and three of its councilmen pursuant to 42 U.S.C. § 1983 and applicable state law seeks redress for the damages and injuries Alexander has suffered from the egregious violation of his constitutional rights, including, his First Amendment right to Free Speech and his Fourteenth Amendment right to due process.

2. Specifically, Alexander sues the Defendants for their retaliation against Alexander for expressing his thoughts and opinions as a private citizen regarding matters of public concern.

–1–

In response to his expression of his political views as to the uncontrolled growth in Gallatin, Defendants embarked upon a malicious and calculated campaign of retaliation in an effort to punish Alexander for daring to make public comments against the City Council.

3. The Defendant Councilmen have a history of acting in concert with acts of threats and coercion to enforce their will on others, including employees of the City, and in a un-American action which is rarely seen at any level of the government, they turned their efforts on Alexander seeking to terminate him from his position with the City or cause him to resign in retaliation for his expression of matters of public concern, which was an exercise of one of the most fundamental and crucial rights retained by United States citizens. Accordingly, this action seeks redress for this stunning abuse of power and to vindicate Alexander's constitutional rights.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over all federal claims in the Complaint arising under the United States Constitution pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4), and under 42 U.S.C. § 2000cc et seq., which confers original jurisdiction on United States Courts in suits to redress the deprivation of rights, privileges, and immunities, as stated herein. This Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. § 2201 and 2202. This Court has pendant and supplemental jurisdiction over all state law pursuant to 28 U.S.C. § 1367(a).

5. Venue lies in this District pursuant to 28 U.S.C. § 1391. The Defendant and Plaintiff are located in this District. All events giving rise to this action occurred in this District.

## PARTIES

6. Plaintiff Jacob L. Alexander ("Alexander") is a United States citizen and a citizen of the State of Tennessee and was born and raised in the City of Gallatin, Tennessee.

–2–

7. Defendant City of Gallatin (hereinafter sometimes referred to as "the City" or "Gallatin") is a duly incorporated municipality under the laws of the State of Tennessee. The City's principal place of business is located at 132 West Main Street, Gallatin, TN 37066 and can be served through its Mayor, Paige Brown.

8. Defendant Craig Hayes, who is being sued in his official capacity and individually, at all times material hereto, was a duly elected councilman of District 4 of the City and has held this position since 1997. He can be served at his residence, to wit: 1156 Inneswood Drive, Gallatin, TN 37066.

9. Defendant Shawn Fennell, who is being sued in his official capacity and individually, at all times material hereto, was a duly elected councilman for the City at-large and has held this position since 2016. He can be served at his place of residence, to wit: 819 Plantation Blvd., Gallatin, TN 37066.

10. Defendant Stephen Fann, who is being sued in his official capacity and individually, at all times material hereto, was a duly elected councilman for the City at-large and has held this position since 2018. He can be served at his place of residence, to wit: 1010 Browns Lane, Gallatin, TN 37066.

## FACTUAL ALLEGATIONS

11. The City of Gallatin, a municipal corporation, was created by the Tennessee General Assembly pursuant to the Private Act of 1953.

12. Pursuant to the City Charter, the corporate authority is vested in the Mayor and City Council. *See* Charter, Art. I, Sec. 3.

13. The governing body of the City of Gallatin is the City Council, which is composed

–3–

of seven (7) Aldermen. *See* Charter, Art. III, Sec. 1.

14.     Pursuant to the City Charter, "[T]he legislative and other powers, except as otherwise provided by this charter, are hereby delegated to and vested in the City Council and the City Council may, by ordinance or resolution not inconsistent with this charter, prescribe the manner in which all powers of the city shall be exercised, provide all means necessary or proper therefor, and do all things needful within or without the city or State to protect the rights of the city." Charter, Art. III, Sec. 6.

15.      As a member of the City Council, councilman[1] take an oath that "they will support the Constitution of the United States and of the State of Tennessee and the charter and ordinances of the city, and they will faithfully discharge the duties of their offices to the best of their ability." Charter, Art. III, Sec. 16.

16.     Under the City Charter, the City Council, "shall . . .fix the salaries and other compensation of all public officers and employees of the City". *See* Charter, Art. VI, Sec. 1.

17.     The City Charter states, "The City Council shall appoint the following public officers: Chief Information Officer, City Attorney, City Engineer, City Judge, City Planner, City Recorder, Director of Codes, Director of Human Resources, Director of Parks and Recreation, Finance Director, Fire Chief, Police Chief, Superintendent of Public Utilities, and Superintendent of Public Works. All officers of the city, except the city attorney, shall devote all of their time to their respective offices. The aforementioned officers shall be appointed by a minimum of five (5) votes of the council, including the mayor, and shall serve at the will of the council. They shall

---

1 Though under the Charter the members of the City Council are referred to as aldermen, colloquially, they are referred to as councilmen and, thus, this term will be used.

–4–

receive such salaries as the council may from time to time designate." Charter, Art. VI, Sec. 2(a).

18.     Under the Gallatin Municipal Code, each city employee is assigned to a job classification based upon duties, authority, and responsibilities and such classifications are approved by the City Council. *See* G.M.C. § 13-105(a)-(b).

19.     Each job classification has a minimum and maximum rate of pay and such pay plan is approved by and can be amended by the City Council from time to time. *See* G.M.C. § 13-106(d).

20.     The Gallatin Municipal Code provides that the City Council has the power "to abolish positions in the classified service". *See* G.M.C. § 13-115.

21.     The employment of City employees is governed by Personnel Rules and Regulations ("Personnel Rules") which are ultimately adopted by the City Council. *See* G.M.C. § 13-104(a).

22.     Under the Personnel Rules, a department head, "may demote an employee in the Classified Service to a position of lower grade for he/she is qualified for any of the following reasons: (a) Because his/her position is being abolished and he/she would otherwise be laid off; . . ." Personnel Rules, § 11-2.

23.     Under the Personnel Rules, department heads have authority to "discipline employees, up to and including termination". Personnel Rules, § 12-8.

24.     Under the Disciplinary Guidelines, an employee can only be disciplined "when justified for cause" and such guidelines "shall be fairly and consistently applied". *See* Personnel Rules, §12-8.

25.     The Disciplinary Guidelines provide a "normal progression of discipline" and it

–5–

"shall be" followed. *See* Personnel Rules, §12-8(b).

26. Under the normal progression of discipline, an employee can only be dismissed "for the most serious violation of performance of conduct". *See* §12-8(b)(5).

27. The normal progression of discipline may be circumvented if the "offense" is "severe" or of "a serious nature". *See* §12-8(c).

28. "Offenses" which are of such a serious nature that "a first occurrence normally" warrants dismissal includes, but is not limited to, possession of illegal drugs, theft, willfully damaging City property; threatening or committing acts of violence; sleeping on the job; or unauthorized possession of explosives. *See* Personnel Rules §12-8(d)(3).

29. Pursuant to the Personnel Rules, a dismissal is defined as "A type of disciplinary action which separates an employee from the Municipal Government payroll for cause."

30. "The dismissal of an employee shall be preceded by an advance written notice explaining the nature of the action, the reasons therefore, and the right to answer charges orally or in writing at a pre-dismissal hearing." Personnel Rules, §12-8(f).

31. Upon receiving notice of dismissal, a city employee has the right to request a "pre-dismissal hearing with the Mayor". *See* Personnel Rules, §12-10(a).

32. "The purpose of pre-dismissal hearings is to provide the basis for making a determination of whether the department head's decision to dismiss the employee is a reasonable one under the circumstances." Personnel Rules, §12-10.

33. The Mayor's decision regarding dismissal is reviewable by the City Council. *See* Personnel Rules, §12-10(e).

34. Alexander began working at the City of Gallatin in July of 2019 as a seasonal

–6–

employee in the Parks and Recreation Department.

35. In September of 2021, Alexander became a full-time groundskeeper in the Gallatin Parks and Recreation Department.

36. At all times material hereto, Alexander enjoyed the protection and privileges of being a classified employee of the City of Gallatin.

37. On or about January 30th, 2025, a friend of Alexander's posted a comment on Facebook regarding Tennessee school vouchers, which was an issue at the Tennessee General Assembly at that time.

38. In response to another post that indicated that "most people were against school vouchers", Alexander responded, "Its kind of like the apartments in Gallatin, everyone is against it but the city council."

39. At the time of the aforementioned post, Alexander was not at work nor was the post made during work hours.

40. Alexander made the subject post as a private citizen of Gallatin on his private Facebook page.

41. The subject post was an exercise of Alexander's First Amendment right to express his views on matters of public concern.

42. The issue of additional apartments and uncontrolled growth in Gallatin has been a significant political and social issue of great concern to the community and public for many years.

43. The issue of additional apartments and uncontrolled growth in Gallatin has been a legitimate news interest for many years.

44. Alexander's position as a groundskeeper at the Parks and Recreation Department

–7–

is wholly unrelated to any government involvement in the permitting or zoning in Gallatin, including as it relates to apartments, and he had no responsibilities related to approving or permitting apartments in Gallatin.

45. Alexander's post did not affect the harmony amongst his co-workers as the comment had no relation to his co-workers or any of their responsibilities.

46. Alexander's post did not interfere with the regular operations of the Parks and Recreation Department.

47. Alexander's comments had no impact on the efficiency of Gallatin's efforts related to its goals and policies of the Parks and Recreation Department.

48. Alexander's subject post was protected First Amendment speech as established by settled law and dictated by controlling law.

49. In response to Alexander's well-established right to exercise his First Amendment right, Defendants retaliated by attempting to terminate his position with the City, cause him to resign and/or silence Alexander through intimidation and harassment.

50. The Defendant Councilmen have been on the City Council together for many years and it is well known that they have formed a coalition which has been used frequently to achieve their common goals.

51. The Defendant Councilmen have a reputation with City officials and employees for using coercion and threats to get what they want.

52. Defendant Hayes was upset and/or offended with Alexander exercising his First Amendment right and in his capacity as a city councilmen, he immediately contacted David Brown, who is the director of the Parks and Recreation Department and who has the authority to

discipline and terminate Alexander, and discussed with Director Brown how Alexander could be silenced, including, if he could be punished or even terminated.

53. Defendant Hayes also discussed with Director Brown the possibility of Alexander being demoted, having his hours cut or even having his job reclassified.

54. Upon arriving at work on January 30th, 2025, which was just over an hour after Alexander made the post, Alexander was confronted by Director Brown and was told that Defendant Hayes was upset about Alexander's post.

55. Director Brown advised that Defendant Hayes was attempting to have Alexander terminated.

56. On the same day, Defendant Shawn Fennell and Defendant Stephen Fann contacted Director Brown and told Director Brown that they wanted Alexander punished and/or fired for having exercised his First Amendment right in the form of a Facebook post.

57 One of the efforts the Defendant Councilmen told Director Brown they would employ to silence or retaliate against Alexander was eliminating or defunding his job through the annual budget process.

58. The Defendant Councilmen told Director Brown to find reasons to punish, harass or terminate Alexander.

59. Upon information and belief, one of the Defendant Councilmen sent a text to Director Brown which stated something to the effect, "if you know what is best for you, you will either fire Jacob or cut his hours to 20 a week."

60. The demands in the foregoing text were very similar to the demands made by Defendant Hayes.

–9–

61. Alexander understood and appreciated the power and authority the Defendant Councilmen had over Director Brown and Alexander's employment with the City and the terms and conditions thereof.

62. Upon Alexander becoming aware of the statements and efforts of the Defendant Councilmen, fearing retaliation and the loss of his job, Alexander took down his post on Facebook.

63. Additionally, Alexander attempted to call each of the Defendant Councilmen to apologize in an effort to avoid punishment, harassment or termination.

64. When Defendant Fann answered the phone he stated, "Sumner County Jail".

65. Alexander spoke with Defendant Fann who stated that he did not understand why Alexander would make such comments online.

66. Defendant Fann told Alexander that it was a mistake for him to make the post.

67. In the conversation with Defendant Fann, Alexander told him that he did not want to lose his job because Alexander feared he would be terminated for having made the post.

68. Defendant Fennell also spoke with Alexander and Alexander apologized as he feared he would lose his job.

69. Defendant Fennell told him he did not understand why he would bash the City Council.

70. Upon Alexander telling Defendant Fennell that he did not want to lose his job, Defendant Fennell responded, "I am in traffic" and hung up on Alexander.

71. Alexander tried to call Defendant Hayes to apologize, but Defendant Hayes would not take Alexander's call.

72. Given the statements and efforts by the Defendant Councilmen, Alexander

–10–

reasonably believed that in retaliation for his post, he would have his hours reduced, be investigated, have his position eliminated or be terminated.

73. Having his employment under a credible threat from the Defendants Councilmen, Alexander experienced a high degree of anxiety and mental anguish and found it hard to complete his duties and responsibilities.

74. In Alexander's discussions with Director Brown and Assistant Director Robbie Riley, it was made clear to Alexander that there was not much they could do or would do to protect Alexander from the retaliation of the Defendant Councilmen.

75. Assistant Director Riley told Alexander that if he was not terminated immediately, the Defendant Councilmen would make Alexander's life "a living hell".

76. Director Brown could have intervened on behalf of Alexander to ensuring his rights as a classified employee were protected as the law and rules required, but instead, Director Brown acquiesced and ratified the efforts by the Defendant Councilmen.

77. The threats and actions by the Defendants deterred Alexander from making further comments regarding matters of public concern.

78. Given Alexander reasonable concerns regarding retaliation and the intolerable working conditions, Alexander was compelled to resign his position.

79. Prior to the subject post, Alexander thoroughly enjoyed his job and he had plans to remain an employee for the City for the duration of his working career.

80. Alexander's family previously worked in the Parks and Recreation Department and it had become a family tradition to be so employed.

81. Alexander did not want to resign his position but was forced to do so given the

−11−

retaliation efforts and harassment by the Defendant Councilmen and Director Brown's acquiescence and ratification of their efforts.

82. Upon Alexander tendering his resignation, none of the Defendant Councilmen nor Director Brown made any effort to convince Alexander he should not resign despite knowing their unconstitutional efforts to retaliate against him lead to his resignation.

**CAUSES OF ACTION**

**COUNT I: 42 U.S.C § 1983, VIOLATIONS OF DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT**

83. Plaintiff incorporates by reference herein as fully as though set forth verbatim the allegations set forth in the preceding numbered paragraphs and does further allege as follows:

84. The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution states: "No state shall . . .deprive any person of life, liberty, or property, without due process of law . . .".

85. 42 U.S.C. § 1983 states in pertinent part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .."

86. Alexander has a fundamental right to pursue any common occupation without undue government interference or influence and other rights implicit in the concept of ordered liberty.

87. Alexander had a property interest and/or a liberty interest in his position with the

–12–

City of Gallatin as under the Personnel Rules Alexander could only be disciplined or dismissed for cause.

88. The Personnel Rules provide a detailed and multi-step process before a City employee can be dismissed including, notice, a pre-dismissal hearing and hearings before the Mayor and the City Council.

89. Alexander has a First Amendment right to free speech, which includes the right to express his ideas and opinions in the form of political speech related to local matters of public concern.

90. Alexander rights under the U.S. Constitution were violated and he was deprived of such rights, immunities and privileges by officials and employees of the City when under the color of the law, City officials and employees acted and conspired to unduly and illegally intimidate, terminate and/or cause Alexander's resignation.

91. Alexander rights under the U.S. Constitution were violated and he was deprived of such rights, immunities and privileges by officials and employees of the City when under the color of the law, City officials and employees acted and conspired to unduly and illegally silence Alexander and prohibit or prevent his First Amendment right to free speech.

92. Alexander rights under the U.S. Constitution were violated and he was deprived of such rights, immunities and privileges by officials and employees of the City when under the color of the law, City officials and employees acted and conspired to unduly and illegally deny Alexander due process under the law before his termination and/or by compelling his resignation.

93. The violations against Alexander and the damages he suffered were the direct result of the City's official policy or custom as such was directed by policy makers and decision makers

–13–

with final authority and/or was approved or ratified by policy makers and decision makers with final authority.

94. In addition or in the alternative, members of the City Council, which is the governing body of the City, actively participated in the violation of Alexander's constitutional rights and, therefore, they demonstrated a reckless indifference to the deprivation of Plaintiff's constitutional rights.

95. The Defendant Councilmen are individually liable for the violations of Alexander's clearly established rights and the damages he suffered as the Defendant Councilmen knowingly violated Alexander's fundamental, clearly established rights as set forth herein and did so with unlawful means and with unlawful intent and, thus, such was objectively unreasonable.

96. As a direct and proximate result of Defendants' actions and/or omissions stated herein, Plaintiff has suffered damages and injuries, including, without limitation, monetary loss, mental anguish, emotional distress, humiliation, embarrassment and loss of enjoyment of life and will continue to suffer such damages and injuries and seeks all remedies and rights to which he is entitled under applicable law for such damages or injuries.

### COUNT II: 42 U.S.C. § 1983, FIRST AMENDMENT RETALIATION

97. Plaintiff incorporates by reference herein as fully as though set forth verbatim the allegations set forth in the preceding numbered paragraphs and does further allege as follows:

98. The United States has long recognized that a claim of retaliation for the exercise of a constitutional rights is cognizable under 42 U.S.C.A. § 1983.

99. Alexander engaged in protected activity by expressing his dissatisfaction with the City Council's handling of the approval of apartments in Gallatin in a Facebook post which was

–14–

read by other citizens of Gallatin.

100. The Defendants took adverse action against Alexander in retaliation for his protected activity as set forth herein.

101. The Defendants took adverse action against Alexander in retaliation for his protected activity, including, but not limited to, attempting to convince or coerce Director Brown to terminate him, reduce his hours, initiate an unjustified investigation or change his job classification.

102. The Defendants retaliated against Alexander for engaging in protected activity by threatening to eliminate or defund his position.

103. The Defendants retaliated against Alexander for engaging in protected activity with harassment and by compelling his resignation.

104. Given Defendants' retaliatory actions, a person of ordinary firmness would be deterred from participating in protected activity.

105. Alexander was deterred by the Defendants' retaliatory action as he removed his post, apologized for his post and did not make any further posts related to the City Council.

106. The violations against Alexander and the damages he suffered were the direct result of the City's official policy or custom as such was directed by policy makers and decision makers with final authority and/or was approved or ratified by policy makers and decision makers with final authority.

107. In addition or in the alternative, members of the City Council, which is the governing body of the City, and Director Brown actively participated in the violation of Alexander's constitutional rights and, therefore, they demonstrated a reckless indifference to the

–15–

deprivation of Plaintiff's constitutional rights.

108. The Defendant Councilmen are individually liable for the violations of Alexander's clearly established rights and the damages he suffered as the Defendant Councilmen knowingly violated Alexander's fundamental, clearly established rights as set forth herein and did so with unlawful means and with unlawful intent and, thus, such was objectively unreasonable.

109. As a direct and proximate result of Defendants' actions and/or omissions stated herein, Plaintiff has suffered damages and injuries, including, without limitation, monetary loss, mental anguish, emotional distress, humiliation, embarrassment and loss of enjoyment of life and will continue to suffer such damages and injuries and seeks all remedies and rights to which he is entitled under applicable law for such damages or injuries.

### COUNT III: VIOLATIONS OF THE TENNESSEE CONSTITUTION

110. Plaintiff incorporates by reference herein the allegations set forth in the preceding numbered paragraphs and does further allege as follows:

111. Defendants' actions and omissions as set forth herein were in violation of the Tennessee Constitution.

112. The Defendants' actions violated Article I, Section 8 of the Tennessee Constitution as such prohibits depriving a citizen of life, liberty or property without due process.

113. The Defendants' actions were in violation of Article I, Section 19 of the Tennessee Constitution which preserves citizens' right to the "free communication of thoughts and opinions".

114. As a direct and proximate result of Defendants' actions and/or omissions stated herein, Plaintiff has suffered a deprivation of their fundamental rights, privileges and immunities afforded under the law and seek declaratory and injunctive relief to prevent such further

–16–

deprivation as requested herein.

**COUNT IV: 42 U.S.C. § 1985, CIVIL CONSPIRACY**

115.     Plaintiff incorporates by reference herein the allegations set forth in the preceding numbered paragraphs and does further allege as follows:

116.     42 U.S.C § 1985(3) states in pertinent part, "If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws: . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

117.     Upon information and belief, Defendants' actions as set forth herein, both separately and combined in a conspiracy, constitute civil conspiracy as such individuals had a common design that accomplished by concerted action an unlawful purpose and/or an unlawful purpose by unlawful means as set forth herein.

118.     Upon information and belief, Defendants and their employees and/or agents communicated and developed the common design that accomplished by concerted effort to unlawfully retaliate against Alexander as set forth herein.

119.     Upon information and belief, Defendants and their employees and/or agents communicated and developed the common design that accomplished by concerted effort to harass Alexander and compel his resignation.

–17–

120.     As a direct and proximate result of Defendants' actions and/or omissions stated herein, Plaintiff has suffered damages and injuries and will continue to suffer such damages and injuries and seeks all remedies and rights to which he is entitled under applicable law for such damages or injuries.

<u>**COUNT V: PUNITIVE DAMAGES**</u>

121.     Plaintiff adopts and re-alleges the foregoing paragraphs as if fully set forth herein.

122.     Defendants' actions as set forth herein were intentional, malicious, fraudulent, reckless and/or with a callous disregard for Plaintiff's rights, thus, entitling Plaintiff to punitive damages.

**WHEREFORE**, **PREMISES CONSIDERED**, Plaintiff Alexander prays that proper process issue and be served upon Defendants, requiring them to answer the Complaint within the time prescribed by law and that this matter be heard before a Jury of six (6) persons on all issues so triable and further, Plaintiff requests:

1.     That the Defendants be held liable under each claim for the relief set forth in this Complaint.

2.     A declaration that Defendants' actions as set forth herein were in violation of the United States Constitution, the Tennessee Constitution and/or applicable state or local law and deprived Plaintiff of his rights, immunities and privileges afforded thereunder.

3.     That Plaintiff be awarded compensatory, special, incidental and other related damages he  has suffered by reason of Defendants' acts or omissions as set forth herein in an amount to be proven at the trial, but not to exceed five hundred thousand and dollars ($500,000), together with legal interest from the date of accrual thereof.

−18−

4.    Plaintiff seeks an order awarding nominal damage for the Defendants' violation of his federal and state constitutional rights.

5.    That the Defendants be required to pay punitive damages to Plaintiff, for Defendants' intentional, malicious, fraudulent and/or reckless actions set forth herein.

6.    That the Defendants be required to pay Plaintiff's reasonable attorney's fees and expert fees  and other costs pursuant to 42 U.S.C. § 1988 and the equitable powers of this Court.

7.    That the Defendants be required to pay pre and post-judgment interest.

8.    That the Defendants be required to pay the Plaintiff's discretionary costs and court costs of this action.

9.    For any other general and further relief as may be considered by this Court and as justice may require.

.

Respectfully submitted,

**CLEMENTS LAW FIRM, PLLC**


 **/s/ Kirk L. Clements**
**KIRK L. CLEMENTS, BPR NO. 20672**
Attorney for Plaintiff
105 Broadway, St. 2
Nashville, TN 37201
615-964-8000
615-953-1902 (fax)
kirk@kirkclementslaw.com


–19–